**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

JULIAN MARCUS RAVEN,

                Plaintiff,

   v.                                                                       1:25-cv-01624 (AMN/DJS)

NEW YORK STATE DEPARTMENT OF
ENVIRONMENTAL CONSERVATION
*et al.*,

                Defendants.

---

**APPEARANCES:**                                              **OF COUNSEL:**

**JULIAN MARCUS RAVEN**
714 Baldwin Street
Elmira, New York 14901
Plaintiff *pro se*

**Hon. Anne M. Nardacci, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.      Introduction**

On November 25, 2025, the Court ordered plaintiff *pro se* Julian Marcus Raven ("Plaintiff") to show cause, by December 5, 2025, why this action should not be dismissed *sua sponte* on numerous grounds. Dkt. No. 11 ("Order"). Beginning on November 27, 2025, Plaintiff made various submissions in response. *See, e.g.,* Dkt. Nos. 15-17, 19, 21, 23, 25. After carefully considering Plaintiff's submissions, the Court finds that Plaintiff has failed to show cause and, for the reasons set forth below, dismisses this action *sua sponte*.

1

II.     **Background**

    A. **Factual Allegations**

Plaintiff owns property in Elmira, New York (the "Property"). Dkt. No. 1 ("Complaint") at ¶ 2. He alleges that defendant New York State Department of Environmental Conservation ("DEC") issued a "March 6, 2017 Order on Consent" that classified the Property as a "'Class 2 Significant Threat' site, despite the absence of due process[.]" *Id.* at ¶¶ 2-3; *see also ELG Utica Alloys, Inc. v. Niagara Mohawk Power Corp.*, No. 16-cv-1523, 2023 WL 2655111, at *4 (N.D.N.Y. Mar. 27, 2023) ("Under New York Environmental Conservation Law, a Class 2 site is one which poses a 'significant threat to the public health or environment – action required.'") (citations omitted). Plaintiff alleges that defendant Dudley Loew ("Defendant Loew") was the DEC employee responsible for this classification in 2017, Dkt. No. 1 at ¶ 15; that defendant Amanda Lefton, the DEC Commissioner ("Defendant Lefton") is also liable because she had "final authority for all orders, decisions, and conclusions made by DEC officials," *id.* at ¶ 14; and that defendant Kathy Hochul, the New York State Governor ("Defendant Hochul") is liable as well, because she is the "ultimately responsible party, over the DEC's actions[,]" *id.* at ¶ 13.

Plaintiff further alleges that, in September 2023, he contacted the DEC regarding his Property. *Id.* at ¶ 37. Plaintiff attaches to the Complaint his September 6, 2023 email to the DEC. Dkt. No. 1-1 at 25; *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) ("A complaint is [also] deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." (alteration in original) (citation omitted)).[1] Plaintiff's email stated:

---

[1] Citations to court documents utilize the pagination generated by CM/ECF, the Court's electronic filing system, and not the documents' internal pagination.

> I hope you are well. Please can you give me a remediation plan status update on [the Property].
>
> I have a tenant I would like to keep updated and I also need to know any upcoming dates for any public meetings or anything I may need to be personally present for. I will be out of the country from mid Nov[.] to mid January for personal family matters.

Dkt. No. 1-1 at 25. Plaintiff alleges that the DEC responded to his request. Dkt. No. 1 at ¶ 38. Plaintiff attaches to the Complaint the DEC's September 7, 2023 response, which stated:

> Since my update to you in May, it was determined that some additional sampling of soil and groundwater was necessary to confirm the nature and extent of site contamination. That sampling was performed by our engineering consultants at HRP on August 30th and we are now waiting on analytical results. Because of this delay, the Proposed Remedial Action Plan is likely to be released closer to the end of this year and we will not proceed with designing the remedy until later into next year.
>
> In the meantime, I can keep you updated on the dates of public comment periods and public meetings as they are decided.

Dkt. No. 1-1 at 26.

More than a year and a half later, Plaintiff alleges that "he learned through a friend who called him while [Plaintiff was] in Spain, that [Plaintiff's P]roperty was on the local news." Dkt. No. 1 at ¶ 39. Plaintiff attaches to the Complaint his March 13, 2025 email to the DEC requesting an update, as well as an email response dated the same day from defendant Kira Bruno, a DEC employee ("Defendant Bruno"). Dkt. No. 1-1 at 29-30; *see also* Dkt. No. 1 at ¶ 40. Defendant Bruno's response stated, *inter alia*, that "[f]or your convenience, the final Proposed Remedial Action Plan is attached to this email, as well as the factsheet." Dkt. No. 1-1 at 30. The attached "State Superfund Program" fact sheet regarding Plaintiff's Property stated, *inter alia*, "Remedy Proposed for State Superfund Site: NEW Public Comment Period and NEW Public Meeting Announced." *Id.* at 32. The fact sheet further stated that "[ ]DEC is accepting written comments about the proposed plan, called a Proposed Remedial Action Plan (PRAP) from **March 12th**

3

through **June 12th, 2025**" and announced that a public meeting at a location in Elmira had been scheduled for May 29, 2025. *Id.* Plaintiff attaches to the Complaint further correspondence he received from the DEC, dated September 5, 2025, which requested that Plaintiff enter into a consent order regarding remediation of the Property. Dkt. No. 1-1 at 34-36.

In October 2025, Plaintiff commenced an Article 78 proceeding in New York State Supreme Court, Chemung County ("State Court"), against the DEC and Defendants Hochul, Lefton, Loew, and Bruno, challenging the March 2017 classification of his Property and seeking emergency relief. *See Raven v. NYS DEC et al.*, Index No. 2025-1215 (N.Y. Sup. Ct. filed Oct. 16, 2025) ("State Court Action"); Dkt. No. 1-1 at 14-16; *see also Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) ("We also take judicial notice of relevant matters of public record.") (citations omitted). In connection with the State Court Action, Plaintiff alleges that he "filed an Order to Show [Cause] and multiple TROs," Dkt. No. 1 at ¶ 70, and also submitted a Freedom of Information Law ("FOIL") request for various records from the DEC, *id.* at ¶¶ 41-46. The FOIL correspondence Plaintiff attaches to the Complaint indicates that he requested, in October 2025, "all electronic communications" "to or from NYS DEC attorney [Defendant] Loew, dated between January 1, 2016 and December 31, 2017, that contain or reference" various search terms. Dkt. No. 1-1 at 8.

Plaintiff alleges that defendant Nicholas Buttino, the assistant attorney general who appeared on behalf of the defendants in State Court ("Defendant Buttino") made false statements in the State Court Action, when he "falsely labeled Plaintiff a 'responsible party'" and stated "that [the] DEC had 'classified the property in 2009.'" Dkt. No. 1 at ¶¶ 18, 84-89. Plaintiff alleges that defendant Letitia James, the New York State Attorney General ("Defendant James") is liable "for supervising attorneys who committed constitutional violations." *Id.* at ¶ 17.

Plaintiff sues Defendants Hochul, James, Lefton, Loew, Bruno, James, and Buttino exclusively in their official capacities. *Id.* at ¶¶ 13-18.

### B. Legal Claims

Plaintiff seeks to assert various claims pursuant to 42 U.S.C. § 1983 ("Section 1983"). He appears to style his claims as various violations of due process, Dkt. No. 1 at ¶¶ 96-113, 71-74;[2] "Denial of Access to the Courts[,]" *id.* at ¶¶ 114-117; and "Stigma-Plus Constitutional Tort[,]" *id.* at ¶¶ 90-95.

### C. Procedural History

On November 19, 2025, following a hearing, the State Court issued an order "find[ing] that there is no imminent harm in the context of moving forward with any remediation or any other enforcement actions[;]" and "denying the request for a temporary restraining order pending the January 6, 2026 return date, without prejudice for leave for [Plaintiff] to reapply to this Court for a temporary restraining order, should the [DEC] exercise its ten-day notice requirements under [N.Y. Env't Conserv. Law §§] 27-1309(4) and 27-1313(8) to move forward with sampling or a remedial action." State Court Action, Dkt. No. 32 at 2.

The next day, Plaintiff commenced this action in federal court. Dkt. No. 1. On November 24, 2025, the Court denied Plaintiff's application for emergency relief and related motions. Dkt. No. 10. On November 25, 2025, the Court issued the Order, detailing numerous potential defects with Plaintiff's claims and ordering him to show cause why the Complaint should not be dismissed *sua sponte*. Dkt. No. 11.

---

[2] These paragraphs have the same numbering as factual allegations earlier in the Complaint, but appear towards the end of the Complaint. *See* Dkt. No. 1 at 21.

On November 27, 2025, Plaintiff made his first submission in response to the Order.  Dkt. No. 15.

On November 29, 2025, Plaintiff filed a submission regarding the State Court Action, stating that the State Court had allegedly not yet ruled "on multiple pending motions" and had not addressed so-called "extrajudicial knowledge[.]"  Dkt. No. 16 at 1.

On December 1, 2025, Plaintiff filed another submission, stating that he had "filed a formal complaint in the New York State Commission on Judicial Conduct and also filed a formal notice with the Sixth Judicial District Administrative Judge" regarding his concerns with the State Court.  Dkt. No. 17 at 2.

On December 2, 2025, Plaintiff filed another submission with a transcript from the State Court Action, noting, *inter alia*, that the State Court's "comments during the [November 14, 2025] hearing reveal extra-judicial knowledge and pre-judgment of my [P]roperty."  Dkt. No. 19 at 3.  The entirety of the comments to which Plaintiff takes issue are emphasized below:

> THE COURT:  Okay.  So, we're going to go ahead and get started on this matter.  I want to make sure that everyone is aware that today we are simply here to argue the issue of the temporary restraining order application that was brought by Mr. Raven.
>
> I know that -- Mr. Raven, I'm looking at some of your submissions that you're somewhat eager to move forward with our January 6th arguments on the merits of your petition.  That's for January.  So, I want you to constrain your arguments.  And I want the respondent in this matter to constrain your arguments simply to the matter of the temporary restraining order that's before the court.  *I am fully aware of all the facts and circumstances of almost 20 years regarding this property.*
>
> So, Mr. Raven, in regards to your request for a temporary restraining order, what would you like me to know?

Dkt. No. 19-1 at 3:9-25 (emphasis added).

6

On December 4, 2025, Plaintiff filed another submission stating that "[o]n December 4, 2025, I filed a **criminal complaint** with Officer [ ] of the Elmira Police Department and Detective Bureau **concerning false and materially misleading statements** made by [Defendant] Buttino during the November 14, 2025 Temporary Restraining Order hearing [in State Court.]"  Dkt. No. 21 at 1.

Plaintiff has filed numerous additional submissions, including on December 4, 2025.  One of Plaintiff's submissions on that day argued, *inter alia*, that, while Plaintiff "had already seen the orders through monitoring of the docket and therefore responded promptly[,]" "[h]ad [Plaintiff] relied on service by mail, [he] would not have had a meaningful opportunity to respond" to the Order.  Dkt. No. 23 at 2.  A subsequent submission that same day stated that "[o]n December 4, 2025, Plaintiff prepared for filing a judicial misconduct complaint" against the Court.  Dkt. No. 25 at 1.

On December 5, 2025, Plaintiff submitted a letter to Chief United States District Judge Brenda K. Sannes in connection with this case.[3]  Dkt. No. 28.  The undersigned respectfully referred that letter to the Chief Judge, and the Chief Judge has responded to Plaintiff.  Dkt. Nos. 31-32.

### III.  STANDARD OF REVIEW

An action is considered "frivolous," as a legal matter, "when either: (1) 'the 'factual contentions are clearly baseless,' . . . or (2) 'the claim is based on an indisputably meritless legal

---

[3] On the same day, Defendant also directed a submission to this Court which stated that "[t]his Notice is **not** a motion for recusal."  Dkt. No. 26 at 1.  Even if it were, the submission provides no basis for recusal.  *See, e.g., Litovich v. Bank of Am. Corp.*, 106 F.4th 218, 224 (2d Cir. 2024) ("[T]he test for whether an appearance of partiality exists 'is an objective one based on what a reasonable person knowing all the facts would conclude.' . . . 'Where a case, by contrast, involves remote, contingent, indirect or speculative interests, disqualification is not required.'") (citations omitted).

7

theory.'" *Murray v. New York*, No. 24-cv-08015, 2024 WL 5009955, at *1 (S.D.N.Y. Dec. 6, 2024) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)). "A claim is based on an 'indisputably meritless legal theory' when either the claim lacks an arguable basis in law . . . or a dispositive defense clearly exists on the face of the complaint." *Livingston*, 141 F.3d at 437. And "[d]istrict courts may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee." *Metellus v. Jolly*, No. 24-2546, 2025 WL 3239753, at *1 (2d Cir. Nov. 20, 2025) (summary order) (quoting *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (*per curiam*)).

*Sua sponte* dismissal may also be appropriate when "it is unmistakably clear that the court lacks jurisdiction, or that the complaint lacks merit or is otherwise defective." *Watley v. Katz*, 631 F. App'x 74, 75 (2d Cir. 2016) (quoting *Snider v. Melindez*, 199 F.3d 108, 113 (2d Cir. 1999)).

Additionally, "a district court may dismiss an action *sua sponte* for failure to state a claim so long as the plaintiff is given notice of the grounds for dismissal and an opportunity to be heard." *Grant v. Cnty. of Erie*, 542 F. App'x 21, 24 (2d Cir. 2013) (citing *Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991)). "The issuance, for example, of an order to show cause why a complaint should not be dismissed *sua sponte* for a stated reason, will typically suffice to provide notice and an opportunity to be heard." *Nwoye v. Obama*, No. 22-1253, 2023 WL 382950, at *1 (2d Cir. Jan. 25, 2023) (summary order) (collecting cases).

Finally, district courts must "liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." *Walker v. Senecal*, 130 F.4th 291, 297 (2d Cir. 2025) (quoting *Kravitz v. Purcell*, 87 F.4th 111, 118 (2d Cir. 2023)).

## IV. DISCUSSION

After detailing numerous potential defects with Plaintiff's claims, the Order stated:

> Plaintiff is invited to address: (i) the timeliness of his Section 1983 claims; (ii) the personal involvement of each Defendant in the constitutional deprivations he alleges; (iii) Eleventh Amendment immunity; (iv) the nature of his Fourteenth Amendment claims; and (v) whether any abstention doctrines apply, given the nature of his claims and his related State Court Action.

Dkt. No. 11 at 3-4. As detailed above, Plaintiff has responded to the Order and has made multiple additional submissions. *See supra* Section II.C.

### A. Statute of Limitations

"The statute of limitations for § 1983 actions arising in New York is three years." *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 308 (2d Cir. 2020) (citations omitted); *see also Bryan v. Fleetbank N.A.*, No. 21-2143, 2022 WL 6832280, at *2 (2d Cir. Oct. 12, 2022) (summary order) (noting "that a court may dismiss a complaint *sua sponte* as time-barred if that defense is clear from the face of the complaint") (citing *Pino v. Ryan*, 49 F.3d 51, 53-54 (2d Cir. 1995)).

As detailed above, the Complaint seeks to challenge the DEC's March 2017 classification of Plaintiff's Property. *See supra* Section II.A. Plaintiff further alleges that he corresponded with the DEC regarding his Property in the ensuing years. *Id.*

In response to the Order, Plaintiff states that he "approached the DEC in 2014 prior to the purchase of the [Property] . . . that was stuck in legal limbo due its inconclusive classification status and lingering fears about potential hazardous waste." Dkt. No. 15 at 10; *see also Hotaling v. Martuscello*, No. 24-cv-01216, 2025 WL 2607661, at *1 (N.D.N.Y. Sept. 9, 2025) ("[W]here a *pro se* plaintiff has submitted other papers to the Court, such as legal memoranda, the Court may consider statements in such papers to supplement or clarify the plaintiff's pleaded allegations.") (alteration in original) (citation omitted). According to Plaintiff, "[t]hree years later DEC project

9

attorney Defendant Loew issued the March 6th, 2017 **Order on Consent**" without adequate process. Dkt. No. 15 at 10. "The order arrived, confusing my [P]roperty with [another property]." *Id.* Plaintiff states that "[a]nd from then on, the DEC has illegitimately acted upon this fatal administrative error[.]" *Id.* at 11. Plaintiff contends that "[a]lthough the DEC's conduct originated in 2017, the constitutional injury alleged is **not a completed historical event**, but an **ongoing and continuing violation** that persists to the present day." *Id.* at 22.

The Court finds that all of Plaintiff's claims challenging the DEC's March 2017 classification of the Property accrued almost nine years ago and are time-barred. *Lucente*, 980 F.3d at 308. Plaintiff's assertion that the continuing violation doctrine should render his claims timely is unpersuasive. *Id.* at 309 ("The continuing violation doctrine, where applicable, provides an 'exception to the normal knew-or-should-have-known accrual date.") (citation omitted). Plaintiff's claims do not appear to implicate the doctrine. *Id.* ("[T]he doctrine is utilized most often in connection with certain Title VII claims[.]"). Even if they do, "the continuing violation doctrine [ ] applies not to discrete unlawful acts, even where those discrete acts are part of 'serial violations,' but to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." *Id.* (citation omitted). The mistreatment Plaintiff alleges accrued in 2017 when he states he learned of the Order on Consent through which the DEC purportedly misclassified his Property. Dkt. No. 15 at 10. As a result, the Court finds that all of Plaintiff's Section 1983 claims challenging that classification and alleging related injuries in the years since are time-barred.[4] *See, e.g., DeSuze v. Ammon*, 990 F.3d 264, 272 (2d Cir. 2021) ("The

---

[4] Plaintiff does not argue that equitable tolling should apply to his claims. *See generally* Dkt. No. 15; *Doe v. United States*, 76 F.4th 64, 71 (2d Cir. 2023). Given Plaintiff's *pro se* status, the Court has nonetheless considered the doctrine, but finds that Plaintiff is not entitled to equitable tolling. *See, e.g., Powell v. Lab Corp.*, No. 17-cv-3632, 2018 WL 6814371, at *5 (E.D.N.Y. Dec. 27, 2018) ("Here, there is absolutely no basis to apply the doctrine of equitable tolling. Plaintiff's own

ensuing injuries allegedly caused the [plaintiffs] continuing harms extending into the limitations period, but 'a continuing violation cannot be established merely because the claimant continues to feel the effects of a time-barred . . . act.'") (second alteration in original) (quoting *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999)).

### B. Personal Involvement

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Morabito v. New York*, 803 F. App'x 463, 466 (2d Cir. 2020) (quoting *Grullon v. City of New Haven,* 720 F.3d 133, 138 (2d Cir. 2013)). The Second Circuit has also made clear that "there is no special rule for supervisory liability" under Section 1983. *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). "Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).

The Complaint fails to allege the personal involvement of the New York State Governor, Attorney General, or DEC Commissioner in any constitutional violation. *See generally* Dkt. No. 1. Plaintiff alleges only that the position each of these Defendants held renders them ultimately responsible for the conduct he seeks to challenge. *Id.* at ¶¶ 13, 14, 17. In response to the Order, Plaintiff reiterates this position as to Defendants Hochul and Lefton, and does not address Defendant James. Dkt. No. 15 at 21. Plaintiff also appears to acknowledge that these "high-level officials" are not "those officials directly responsible for the ongoing conduct at issue[.]" *Id.* Because Plaintiff has not alleged the personal involvement of Defendants Hochul, James, and

---

allegations demonstrate that he was aware of defendants' alleged violations at the time they occurred.").

11

Lefton in any constitutional violation, all claims against these Defendants are dismissed. *See, e.g., Tangreti*, 983 F.3d at 618; *Hernandez v. Keane*, 341 F.3d 137, 144-45 (2d Cir. 2003) ("[S]upervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on *respondeat superior*. . . . 'Absent some personal involvement by [the supervisory official] in the allegedly unlawful conduct of his subordinates,' he cannot be liable under section 1983.") (second alteration in original) (citations omitted).

### C.  Eleventh Amendment Immunity

As the Court previously noted, "any Section 1983 claim for money damages against the DEC or New York State officials that is timely . . . nonetheless appears barred by the Eleventh Amendment, *see, e.g., Morabito*[, 803 F. App'x at 465] ('It is well settled that § 1983 does not override Eleventh Amendment immunity. . . . The district court thus correctly held that the Eleventh Amendment barred the [plaintiff's] § 1983 suit against New York (a state), the DEC (a state agency), and Seggos (a state official) in his official capacity.') (citation omitted)." Dkt. No. 10.

The Complaint asserts that, because of the DEC's classification, Plaintiff suffered "reputational stigma, and economic harm[,]" Dkt. No. 1 at ¶ 40; "immediate and substantial economic harm[,]" *id.* at ¶ 60; and "tangible and measurable harm, including loss of Plaintiff's commercial tenant, interference with business opportunities, reputational damage in the community, and diminution of property value[,]" *id.* at ¶ 94.  Plaintiff has also argued that the alleged constitutional violations are ongoing because of his "[c]ontinued reputational and economic injury[.]" Dkt. No. 15 at 22.

Plaintiff has clarified, however, that he "does not seek monetary damages from the State of New York, the DEC, or any official sued in an official capacity. **To the extent any stray language**

12

**in the Complaint could be read as seeking monetary damages from [these defendants], Plaintiff expressly disclaims and withdraws any such relief.**" *Id.* at 31. Accordingly, the Court finds that the Complaint does not state a claim for money damages against any Defendant. *Hotaling*, 2025 WL 2607661, at *1.

Plaintiff argues that Defendants are not immune from the non-monetary relief he seeks pursuant to the *Ex parte Young* exception to Eleventh Amendment immunity. *See, e.g.,* Dkt. No. 15 at 11-12. Under this exception, "a plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for prospective, injunctive relief from violations of federal law." *State Emps. Bargaining Agent Coal v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007) (citation omitted). However, "the Supreme Court has made clear that this exception only contemplates action brought against individual defendants in their official capacities, and 'has no application in suits against the States and their agencies, which are barred regardless of the relief sought.'" *Mann v. N.Y. State Ct. of Appeals*, No. 21-cv-49, 2021 WL 5040236, at *5 (N.D.N.Y. Oct. 29, 2021) (quoting *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993)). Thus, any Section 1983 claim against the DEC is barred by the Eleventh Amendment.

The Court need not determine whether Plaintiff's remaining claims fall within the *Ex parte Young* exception because, even if they do, none are viable for the reasons discussed next.

**D. Failure to State a Claim**

To the extent that any of Plaintiff's claims are timely and are not barred by the Eleventh Amendment, his allegations fail to state a claim under Section 1983 against any Defendant.

Under Section 1983, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United

13

States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' is 'liable to the party injured.'" *Kravitz*, 87 F.4th at 129 (alterations in original) (quoting 42 U.S.C. § 1983).

Plaintiff has not stated a procedural due process claim. *See, e.g.,* Dkt. No. 1 at ¶¶ 108-113. "To prevail on a Fourteenth Amendment procedural due process claim, [Plaintiff] must demonstrate '(1) that Defendants deprived him of a cognizable interest in 'life, liberty, or property,' (2) without affording him constitutionally sufficient process.' " *Baltas v. Maiga*, 119 F.4th 255, 263 (2d Cir. 2024) (quoting *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017)). Regardless of whether Plaintiff's allegations are sufficient to establish the first element, Plaintiff cannot allege that he was denied constitutionally sufficient process. As the Order noted, given the nature of Plaintiff's claims,

> his pending Article 78 proceeding vitiates any due process claim under Section 1983. *See, e.g., Nicholas v. Seggos*, No. 23-cv-463, 2023 WL 6121164, at *6 (N.D.N.Y. Sept. 19, 2023) ("In New York State, an Article 78 proceeding provides an avenue of postdeprivation redress that satisfies due process requirements.") (citation omitted), *report and recommendation adopted*, 2023 WL 7004103 (N.D.N.Y. Oct. 24, 2023); *Beechwood Restorative Care Ctr. v. Leeds*, 436 F.3d 147, 157 (2d Cir. 2006) ("An Article 78 proceeding is adequate for due process purposes even though the petitioner may not be able to recover the same relief that he could in a § 1983 suit.") (citation omitted).

Dkt. No. 11 at 2. Plaintiff's submissions do not appear to argue otherwise. *See, e.g.,* Dkt. No. 15. Instead, Plaintiff "notes that related claims remain actively pending in **New York State Supreme Court**" and argues "that Plaintiff's claims present substantial, justiciable issues that [t]he New York Supreme Court has found worthy of formal consideration[.]" *Id.* at 18. Because Plaintiff is presently pursuing the very process that is implicated by his claims, he has failed to state a procedural due process claim.

14

Plaintiff has also not stated a substantive due process claim. Dkt No. 1 at ¶¶ 102-107. "The Fourteenth Amendment guarantees 'more than fair process'; it 'cover[s] a substantive sphere as well, barring certain government actions regardless of the fairness of the procedures used to implement them.'" *Hurd v. Fredenburgh*, 984 F.3d 1075, 1087 (2d Cir. 2021) (alteration in original) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998)).  Plaintiff's substantive due process claim is simply a threadbare reformulation of his procedural due process claims, and thus fails for the same reasons.[5]  In any event, his allegations—which boil down to his contention that a state agency made an "administrative error" in 2017, Dkt. No. 15 at 11—are insufficient to state a substantive due process claim. *See, e.g., Handsome, Inc. v. Town of Monroe*, No. 23-711, 2024 WL 2747142, at *4 (2d Cir. May 29, 2024) (summary order) ("Substantive due process is an outer limit on the legitimacy of government action.  It does not forbid governmental actions that might fairly be termed arbitrary and capricious and for that reason correctable in a state court lawsuit seeking review of administrative action[.]") (citation omitted); *Ferran v. Town of Nassau*, 471 F.3d 363, 369-70 (2d Cir. 2006) ("To establish a substantive due process violation, the [plaintiffs] must show that the [defendant]'s alleged acts against their land were . . . . 'conscience-shocking," or "oppressive in the constitutional sense," not merely "incorrect or ill-advised."') (citation omitted).

Plaintiff has also failed to state a separate due process claim for "False Government Statements." Dkt. No. 1 at ¶¶ 71-74 (citing, *inter alia*, *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997)).  As the authority that Plaintiff cites makes clear, such claims typically arise from the fabrication of evidence in connection with a criminal proceeding. *See, e.g., Ricciuti*,

---

[5] Another of Plaintiff's claims similarly contends that Defendants acted without "the procedural and substantive prerequisites" and also fails for these reasons. Dkt. No. 1 at ¶¶ 96-101.

15

124 F.3d at 130 ("When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983.") (citations omitted); *Ortiz v. Stambach*, 137 F.4th 48, 67 (2d Cir. 2025) ("In order to prevail on a Section 1983 fabrication of evidence claim, a plaintiff must demonstrate that '(1) [an] investigating official (2) fabricat[ed] information (3) that is likely to influence a jury's verdict, (4) forward[ed] that information to prosecutors, and (5) the plaintiff suffer[ed] a deprivation of life, liberty, or property as a result.") (alterations in original) (quoting *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016)). Plaintiff alleges the existence of no such proceeding, nor any constitutional deprivation as a result of the purportedly false statements Defendant Buttino made in the course of civil litigation brought by Plaintiff. Ultimately, Plaintiff's disagreement with certain of Defendant Buttino's arguments in State Court provides no basis for a constitutional claim in federal court. *See also Parent v. New York*, 786 F. Supp. 2d 516, 540-41 (N.D.N.Y. 2011) ("In New York, 'in the context of a legal proceeding, statements by parties and their attorneys are absolutely privileged if, by any view, or under any circumstances, they are pertinent to the litigation.'") (quotations omitted) (quoting *Lipin v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 202 F. Supp. 2d 126, 137 (S.D.N.Y. 2002)).

Plaintiff has also not stated a claim for "Denial of Access To The Courts[.]" Dkt. No. 1 at ¶¶ 114-117. "A plaintiff's 'constitutional right of access to the courts is violated where government officials obstruct legitimate efforts to seek judicial redress.'" *Friedman v. Bloomberg L.P.*, 884 F.3d 83, 90 (2d Cir. 2017) (citations omitted). As an initial matter, Plaintiff is presently and actively litigating his related claims in two separate courts. Plaintiff alleges that the DEC improperly denied the FOIL request he submitted during the pendency of the State Court Action, and that

16

Defendant Butino made false statements in the State Court Action. *See, e.g.,* Dkt. No. 1 at ¶ 117 ("By withholding 148 internal emails, [and] misrepresenting facts to the court, Defendants obstructed Plaintiff's ability to fairly present his claims."). This claim appears to be a backward-looking right-to-access claim. *See, e.g., Sousa v. Marquez*, 702 F.3d 124, 128 (2d Cir. 2012) ("The viability of backward-looking right-of-access claims is far from clear in this Circuit[.]"). Even if this claim is viable, "such claims are available only if a judicial remedy was 'completely foreclosed' by the false statement or nondisclosure." *Id.* (citation omitted). The alleged conduct about which Plaintiff complains fails to meet that standard. *Id.* at 128 ("That is because a plaintiff who has knowledge of the facts giving rise to his claim and an opportunity to rebut opposing evidence *does* have adequate access to a judicial remedy."); *see also Parent*, 786 F. Supp. 2d at 540-41.

Finally, Plaintiff has not stated a "Stigma-Plus Constitutional Tort" claim. Dkt. No. 1 at ¶¶ 90-95. The Complaint alleges that, as a result of the DEC's public comment and public meeting notice in or about March 2025, Plaintiff suffered "reputational stigma, and economic harm[.]" *Id.* at ¶ 40; *see also id.* at ¶¶ 59-60, 94. Plaintiff's submission clarifies that he "does not seek retrospective compensation or relief sounding in tort." Dkt. No. 15 at 11; *see also id.* at 12, 31. As a result, Plaintiff does not appear to be pursuing a tort claim based on any allegedly defamatory statements by Defendants. *Vega v. Luntz*, 596 F.3d 77, 81 (2d Cir. 2010) ("Generally, defamation is an issue of state, not of federal constitutional law. . . . However, under limited circumstances, federal constitutional relief is available for defamation committed by government officials.") (citations omitted). To the extent that Plaintiff is nonetheless pursuing a stigma-plus claim for non-monetary relief, his allegations fail to establish "(1) 'the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she

17

claims is false,' and (2) 'a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights.'" *Id.* (citation omitted).

For all of these reasons, Plaintiff has failed to state any claim against any Defendant.[6]

### E. Reconsideration

Plaintiff appears to seek reconsideration of the Court's denial of his application for emergency relief. *See generally* Dkt. Nos. 10, 15. After carefully considering Plaintiff's submissions, the Court finds that Plaintiff has offered no basis that could warrant reconsideration. *See, e.g., Commerzbank AG v. U.S. Bank, N.A.*, 100 F.4th 362, 377 (2d Cir. 2024) ("'The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" . . . Accordingly, the standard for granting a motion for reconsideration is 'strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'") (citations omitted). Additionally, for all the reasons stated above, Plaintiff has failed to allege a viable claim that could entitle him to emergency or injunctive relief. *See supra* Section IV.A-D.

### F. Leave to Amend

The Court has carefully considered whether to grant Plaintiff leave to amend, particularly given that he is proceeding *pro se*. But Plaintiff's claims suffer from a host of substantive defects,[7]

---

[6] Neither the Complaint nor Plaintiff's submission indicate that he is pursuing any state law claims in this federal action. *See generally* Dkt. Nos. 1, 15. Regardless, given the absence of a viable federal claim, the Court would lack jurisdiction over any state law claim against non-diverse parties. 28 U.S.C. § 1367.

[7] Given the numerous defects already detailed, the Court does not reach the additional potential defects set forth in the Order. Dkt. No. 11 at 3-4.

as detailed above.  Because numerous substantive defects could not be cured with better pleading, leave to amend is denied as futile.  *Terry v. Inc. Vill. of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016) ("Although district judges should, as a general matter, liberally permit *pro se* litigants to amend their pleadings, leave to amend need not be granted when amendment would be futile.") (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

Finally, while Plaintiff is not proceeding *in forma pauperis* in this action, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any *in forma pauperis* appeal from this Memorandum-Decision and Order would not be taken in good faith.

## V. Conclusion

Accordingly, the Court hereby

**ORDERS** that the Complaint is **DISMISSED *sua sponte*, without leave to amend**; and the Court further

**ORDERS** that Plaintiff's additional pending motions, Dkt. Nos. 7, 22, 26, are **TERMINATED as moot**; and the Court further

**ORDERS** that the Clerk serve a copy of this Order on all parties in accordance with the Local Rules.[8]

**IT IS SO ORDERED.**

Dated: February 2, 2026
Albany, New York

_____
Anne M. Nardacci
U.S. District Judge

---

[8] The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein that have not been previously provided to him.